IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TONYA FARRELL,

        Plaintiff,

v.                               CIVIL ACTION NO. 1:23-CV-60
                                      (KLEEH)

MON HEALTH CARE, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 35]

Pending before the Court is *Defendant Mon Health's Motion for Summary Judgment* [ECF No. 35]. For the reasons discussed herein, the Motion is **GRANTED**.

## I.   RELEVANT PROCEDURAL HISTORY

On or about July 7, 2023, Plaintiff Tonya Farrell ("Plaintiff" or "Farrell") filed suit against Defendant Mon Health Care, Inc. ("Defendant" or "Mon Health") in the Circuit Court of Monongalia County, West Virginia. ECF No. 1-1. Plaintiff's Complaint alleges (1) Family Medical Leave Act retaliation and discrimination; (2) retaliation in violation of public policy for reporting a HIPAA violation; and (3) common law wrongful termination. ECF No. 1-1. Thereafter, Mon Health removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting federal question and supplemental jurisdiction. ECF No. 1.

On September 19, 2024, Defendant filed *Defendant Mon Health's*

*Motion for Summary Judgment* [ECF No. 35] and supporting memorandum [ECF No. 36]. Plaintiff responded in opposition to summary judgment on October 3, 2024 [ECF No. 37] and Defendant replied in support of its Motion on October 17, 2024 [ECF No. 38].

On October 24, 2024, Farrell filed *Plaintiff's Motion to Strike, or in the alternative, Motion to Reopen Discovery and for Leave to File Surreply Regarding Defendant's Motion for Summary Judgment* [ECF No. 39]. Defendant responded in opposition [ECF No. 40] and Plaintiff replied in support of her motion [ECF No. 42]. By separate Order, the Court denied Plaintiff's motion [ECF No. 39] and ruled the Court would not exclude evidence of Mary Lou Frizza's FMLA use. ECF No. 77.

The Court convened for oral arguments on the subject motion on January 22, 2025. The Motion for Summary Judgment is fully briefed and ripe for review.

## II. FACTUAL BACKGROUND

Farrell was first hired by Mon Health on December 13, 2020, as a full-time Entrance Screener for the Wedgewood Clinic. ECF No. 35-2 at p. 22. Beginning in April 2021, Farrell moved into the position of Registration Representative at the Wedgewood Clinic. ECF No. 35-1, Farrell Dep. at p. 18. As the Registration Representative, Farrell's job duties included performing the patient registration process; communicating with patients and their families; answering phones; handling money; verifying and

authorizing insurance; and obtaining patient information and documenting patient data in Mon Health's electronic health record and other systems. ECF No. 35-2 at pp. 25-27. Farrell reported directly to Clinic Manager Marcy Cornell ("Manager Cornell"), who was supervised by Primary Care Service Line Director Erin Hathaway ("Director Hathaway"). ECF No. 35-1 at p. 21; ECF No. 35-3, Cornell Dep. at p. 19:4-5; ECF No. 35-4, Hathaway Dep. at p. 20. During Plaintiff's employment at the Wedgewood Clinic, Mon Health employed four Registration Representatives on staff who worked staggered shifts. ECF No. 35-1, Farrell Dep. at p. 31; ECF No. 35-3, Cornell Dep. at p. 46:16-22; ECF No. 35-4, Hathaway Dep. at p. 37:12-13. Plaintiff worked the 8:00 a.m. to 4:00 p.m. Registration Representative shift consistently until July 2022. ECF No. 35-6 at p. 109; ECF No. 35-1, Farrell Dep. at p. 31.

As a Registration Representative, Farrell had to regularly access confidential medical records to complete her job duties. Accordingly, Mon Health trained employees, including Plaintiff, on its confidentiality and patient privacy policies. See ECF No. 35-3, Cornell Dep. at pp. 26:14-27:11. New employees were instructed on how to report compliance concerns and trained on Mon Health's confidentiality and patient privacy policies and expectations during new employee orientation. ECF No. 35-2 at pp. 58-59. The orientation also covered laws and regulations relevant to the health care industry, including HIPAA. Id. at p. 49. Plaintiff

3

received this training twice, once in December 2020, when she first started, and again in 2021, after transitioning to the Registration Representative role.  ECF No. 35-1, Farrell Dep. at p. 37:11-15; ECF No. 35-2 at pp. 38-59.

Farrell agreed to comply with Mon Health's Nondisclosure of Confidential Information policy on November 22, 2020.  The policy barred Plaintiff from disclosing her computer password to anyone, allowing anyone to use her password for access, or using anyone else's password for access.  ECF No. 35-2 at p. 61.  The policy also barred Plaintiff from accessing or reviewing patient records without authorization.  Id.  Plaintiff also received electronic access to Mon Health's Employee Handbook.  Id. at p. 60.  Mon Health has a Sanction Policy for HIPAA Violations, which provides that such violations could be grounds for disciplinary action up to and including termination.  ECF No. 35-2 at pp. 62-65.

Mon Health provided continued video training to its employees on various topics including protected health information ("PHI"), HIPAA, confidentiality, employee benefits, and compliance.  ECF No. 35-1, Farrell Dep. at pp. 35-36; ECF No. 35-2 at pp. 29-31. The HIPAA PHI policy instructed employees to not access PHI unless necessary for their jobs. ECF No. 35-2 at pp. 32-37. Specifically, employees were advised that "'[s]nooping' in patient medical records is never ok." Id. at p. 32. Further, Mon Health utilized a "lock before you walk" policy that required employees to lock

their workstations to prevent others from accessing their computers, before leaving their desks. Id. at p. 35. Plaintiff understood Mon Health's policies regarding PHI and its expectations for employee to lock their computer workstations. ECF No. 35-1 at pp. 36-37.

Beginning in 2022, Plaintiff applied for and was granted intermittent FMLA leave to care for her son. ECF No. 35-1 at pp. 43-44; ECF No. 35-2 at pp. 76-79. Through Mon Health's third-party administrator, New York Life, Farrell was initially granted intermittent leave from February 23, 2022, to August 22, 2022, entitling Farrell to use up to 480 hours to care for her son's medical needs. ECF No. 35-2 at pp. 76-79. Farrell received an approval letter from New York Life, dated April 11, 2022, instructing Farrell on how to report the leave time she used. Id. Farrell was approved for additional intermittent FMLA leave from August 23, 2022, to February 22, 2023. ECF No. 35-2 at pp. 80-82. The second leave period allowed Farrell to take leave for two occurrences of up to 32 consecutive work hours, every month and two office visits of up to two hours, every month. Id.

To accommodate Farrell's need for intermittent leave, and ensure proper coverage at the Wedgewood clinic for opening, Mon Health would either schedule Plaintiff for the 9:00 a.m. to 4:00 p.m. shift or schedule two Registration Representatives to start work at 7:45 a.m. ECF No. 35-1, Farrell Dep. at pp. 140-

5

41; ECF No. 35-6, Smith Dep. at pp. 70:15-72:6.  On July 25, 2022, Farrell emailed HR Business Partner Tiffany Smith regarding concerns with her schedule being changed. ECF No. 35-6 at p. 109. Farrell expressed that she felt the scheduling change was "a personal attack because of previous things going on." Id.

Director Hathaway reminded Plaintiff on August 16, 2022, that she must report her used FMLA leave time to New York Life.  ECF No. 35-2 at p. 83.  Director Hathaway contacted Farrell again on September 6, 2022, and September 13, 2022, because she had not yet reported 297.3 hours of FMLA benefits to New York Life.  ECF No. 35-2 at p. 89.  After speaking with New York Life, Director Hathaway emailed Farrell again on September 19, 2022, because she learned that Farrell had still not reported her used leave.  ECF No. 35-2 at p. 91.  On September 23, 2022, Director Hathaway escalated the situation to her superiors, seeking assistance, because though Farrell told her she would call New York Life after work that week, the FMLA hours still had not been reported. ECF No. 35-2 at pp. 92-93. Plaintiff indicated via email on September 27, 2022, that she was working to provide the correct hours to New York Life, while tending to her son's medical needs. ECF No. 35-2 at p. 90.

On October 22, 2022, Director Hathaway contacted Farrell, Manager Cornell, Jennifer Carr, and Tiffany Smith, stating that Plaintiff had not yet reported her leave to New York Life, nor had

6

she gotten 200 hours of her leave approved. ECF No. 35-2 at pp. 94-95. Meaning, Farrel reported to Mon Health approximately 200 hours of FMLA leave that was not approved/reported to New York Life. ECF No. 35-2 at p. 94. On November 1, 2022, Associate General Counsel Heather Wright contacted Director Hathaway, Nicole Linger, Jennifer Carr, and Tiffany Smith and directed Human Resources to calculate Plaintiff's absence occurrences and prepare appropriate disciplinary action. ECF No. 35-2 at p. 96. The email indicated that the discipline and absences could be adjusted if Farrell reported her protected absences to New York Life, as previously directed. Id. Ultimately, Farrell did not receive any discipline for her attendance issues and failure to properly document her leave. ECF No. 35-1, Farrell Dep. at pp. 45-47; ECF No. 35-4, Hathaway Dep. at pp. 42:22-43:9. Farrell was never denied leave to take her son to his medical appointments. ECF No. 35-1, Farrell Dep. at p. 59.

In early September 2022, Plaintiff's co-workers, Mary Lou Frizza and Marsha O'Bryan, raised concerns that Farrell might have accessed and reviewed their medical charts to Director Hathaway because Farrell knew intimate details regarding their medical history. ECF No. 35-4, Hathaway Dep. at pp. 65:17-66:9. Accordingly, Director Hathaway investigated the allegations, which included requesting an audit of Plaintiff's chart access. ECF No. 35-4, Hathaway Dep. at p. 66:4-7; ECF No. 35-8 at pp. 2-3. System

Privacy Officer Lauren Gregory audited Farrell's access and determined that Plaintiff accessed Frizza's, O'Bryan's, and Kilee Riggleman's charts on multiple occasions. ECF No. 35-8 at pp. 2-3. Upon review of the audit, Director Hathaway referred the matter to Human Resources because she believed Farrell's access to the charts included inappropriate access. Id. For example, the audit reflected that Farrell accessed a mammography encounter for Frizza. Id.

Director Hathaway met with Farrell regarding the compliance audit, noting inappropriate access of her coworkers' medical records on four occasions in 2022. ECF No. 35-6 at p. 105. Farrell denied accessing her co-workers' records improperly and stated that she only used medical records as necessary for scheduling appointments. Id. Farrell further postulated that someone else could have accessed the records under her computer log-in because she did not log off from her workstation when going to lunch. Id.; ECF No. 35-1, Farrell Dep. at p. 68. Director Hathaway advised Plaintiff that she must always log out of her workstation when stepping away from her desk. ECF No. 35-6 at p. 105. Farrell acknowledged that allowing others to access records under her log-in violated Mon Health's HIPAA policy. Farrell Dep. at p. 68.

Farrell was issued a Final Written Warning ("FWW") on September 21, 2022, for violating Mon Health's HIPAA Privacy Policy. ECF No. 35-6 at p. 105. The FWW set forth expectations

for Farrell moving forward that included only accessing records necessary for her job duties; locking and logging out of her workstation when stepping away; and performing all of her job functions. Id. The FWW also warned that any further violation of Mon Health's privacy policy could result in disciplinary action, up to termination. Id.

Thereafter, on October 24, 2022, Farrell called Mon Health's Compliance Line to report that co-workers Frizza and O'Bryan were making accusations regarding her use of FMLA leave. ECF No. 35-9 at p. 2; ECF No. 35-1 at p. 55. Plaintiff reported that Frizza and O'Bryan claimed she was taking off time for attention, accused her of "wanting" her son to be sick, and that Frizza specifically claimed Plaintiff's son was not sick. ECF No. 35-9 at p. 2. Plaintiff claimed she first reported the behavior to Clinical Manager Patricia Stewart a month prior but that the behavior continued. Id. Farrell further expressed concern that Director Hathway would not address Frizza and O'Bryan's behavior. Id.

HR Business Partner Smith directed Manager Cornell and Director Hathaway to investigate Farrell's claims by meeting with each of the employees involved and ensure the employees understood that the alleged behavior was inappropriate. ECF No. 35-6 at p. 103; ECF No. 35-6, Smith Dep. at pp. 33:13-36:5. On or about October 27, 2022, Manager Cornell and Director Hathaway met with Frizza and O'Bryan individually, who denied making the accused

comments regarding Farrell. ECF No. 35-6 at p. 102; ECF No. 35-4 at p. 50:3-14. Though Director Hathaway was inclined to believe them, Manager Cornell did not think they were being truthful. ECF No. 35-3, Cornell Dep. at pp. 52:7-53:14. Notwithstanding, Frizza and O'Bryan were told that the alleged behavior was inappropriate and must stop, if it were occurring. ECF No. 35-6 at p. 102; ECF No. 35-3, Cornell Dep. at pp. 52:22-53:2. Director Hathaway and Manager Cornell then met with Plaintiff to explain that her report was investigated and that the reported behavior would not occur moving forward. Id. In a follow-up, Director Hathaway spoke with Patricia Smith, who denied that Farrell ever raised these concerns to her previously. ECF No. 35-6 at p. 102. Following the October 2022 investigation, Farrell did not report any other comments regarding her son's illness or her FMLA use to Cornell. ECF No. 35-3, Cornell dep. at p. 54:8-12.

A few weeks later, on November 8, 2022, Plaintiff called Mon Health's Human Resources Services and Integration Director Thomas Burwell to report that she believed Frizza accessed her email account and reviewed correspondence regarding her son's medical care. ECF No. 35-1, Farrell Dep. at pp. 75:2-76:7. According to Plaintiff, while she was away from her workstation to deliver lunches, co-worker Kilee Riggleman observed Frizza go to Farrell's computer and look at her email account. Id. Riggleman immediately found Plaintiff and reported that Frizza opened an email with

Farrell's son's name in it.  Id.; ECF No. 35-5, Riggleman Dep. at
p. 22:15-20.  Riggleman testified that the email contained FMLA
information.  ECF No. 35-5, Riggleman Dep. at p. 20:17-22.

After speaking on the phone with Farrell regarding her report,
Burwell emailed Plaintiff on November 9, 2022, to seek additional
clarification.  ECF No. 35-2 at p. 67.  Specifically, Burwell asked
how she knew which email was accessed and how Frizza would have
been able to access her workstation.  Id.  On November 10, 2022,
Plaintiff responded that nothing was open on her workstation when
she returned to her desk and that she knew it was an email regarding
her son based upon Riggleman's report.  Id.  Plaintiff further
wrote that she did not know if her computer had been locked when
she went to deliver the lunches or if Frizza knew her password.
Id.[1]

The same day, Manager Cornell, Director Hathaway, and members
of the Human Resources team met via Zoom to discuss the situation.
ECF No. 35-3, Cornell Dep. at pp. 57:10-58:4; ECF No. 37-13,
Burwell Dep. at pp. 80:23-81:2.  They determined that Farrell
should be terminated for failing to lock her computer or log out
of access when she stepped away from her workstation.  ECF No. 35-
3, Cornell Dep. at p. 58:16-21; ECF No. 37-13, Burwell Dep. at pp.

---

[1] Approximately, 16 months later, Plaintiff testified that she
"absolutely [did] not" leave her computer station unlocked. ECF
No. 35-1, Farrell Dep. at p. 76:8-19.

65:12-66:1.  Manager Cornell did not express disagreement with the decision to end Farrell's employment, but did believe the others wanted to get Plaintiff out.  ECF No. 35-3, Cornell Dep. at p. 59:1-24.  Cornell testified that employees at the Wedgewood Clinic would leave their computers unlocked all the time, but that she would correct the behavior when she saw it.  ECF No. 35-3, Cornell Dep. at pp. 63:24-64:2.

The group formulated a plan for Smith and Cornell to terminate Farrell at 4:00 p.m. on November 10, 2022.  ECF No. 35-3, Cornell Dep. at p. 66:6-20.  However, Cornell did not follow the plan and instead told Plaintiff that there would be a meeting with HR, in which she would be let go.  ECF No. 35-3, Cornell Dep. at pp. 66:22-67:10; ECF No. 35-1, Farrell Dep. at pp.82-83.  Cornell provided Farrell with a prepared termination letter.  ECF No. 35-3, Cornell Dep. at p. 68:18-19; ECF No. 35-1, Farrell Dep. at p. 85.  The letter stated that Farrell's employment was terminated due to her "[f]ailure to Lock or Logout of access when stepping away from workstation."  ECF No. 35-10 at p. 2.  The letter further referenced Farrell's prior FWW, in which she was counseled to lock her computer when not working at a workstation.  Id.  Farrell signed and acknowledged receipt of the letter.  Id.

On November 15, 2022, Farrell sent an email to Chief Human Resources Officer Katie Davison and Vice President of Physician Services Karen Friggens, requesting an appeal to her termination.

ECF No. 35-2 at pp. 68-71.  In the appeal email, Farrell stated that Frizza read an email in her account "that pertained to her [Frizza] where I had reached out to compliance."  ECF No. 35-2 at p. 68.  She summarized Burwell's investigative efforts, including speaking with him on the phone on November 8, 2022, and being instructed to determine if her email account was altered, and a follow-up email with additional questioning regarding how Frizza could have accessed her email on November 10, 2022.  Id.  The appeal email also noted that Frizza was questioned regarding the allegations on November 10, 2022.  Id.  However, Plaintiff felt that the matter was not investigated, that her termination was unwarranted, and that she was being targeted.  Id.

Specifically, Farrell stated that she was terminated because Director Hathaway wanted her fired and in "retaliation after [she] had went to compliance over her."  Id.  Farrell claimed that she had reached out to Human Resources, Compliance, and Mon Health management and leadership regarding Hathaway's treatment and provided a chronology of the alleged mistreatment.  ECF No. 35-2 at pp. 68-69.  Farrell claimed that Hathaway scolded or yelled at her in front of co-workers on multiple occasions, that Hathaway did not correct a doctor's reported mistreatment of staff, that Hathaway refused to address complaints about compensation, and general belief that Hathaway wanted her terminated.  ECF No. 35-2 at pp. 69-70.  Addressing Farrell's September 2022 write-up, she

13

denied accessing co-workers' medical records and contended others used her log-in information.  Id.  Plaintiff also included her issues with Frizza.  Id.  None of the alleged mistreatment by Director Hathaway involved Plaintiff's use of FMLA or reporting a HIPPA violation.

On November 29, 2022, Davison sent Plaintiff a formal letter following a review of her appeal.  ECF No. 35-2 at pp. 72-73.  The letter indicated that Davison first responded to Farrell's email on November 16, 2022, requesting a time for Plaintiff to speak with her and Friggens.  ECF No. 35-2 at p. 72.  Davison stated that Plaintiff did not reply and that she sent a follow-up email on November 21, 2022, repeating her request to meet with Plaintiff.  Id.  Davison informed Farrell that she would proceed with her review of the appeal request based upon the information in Farrell's November 15, 2022, email if she did not hear from her.  Id.  Farrell denies receiving the follow-up emails.  ECF No. 35-1 at pp. 108-109.

According to Davison's letter, she reviewed each allegation in Farrell's appeal and investigated her claims.  ECF No. 35-2 at p. 72.  The appeal review confirmed that Director of HR Services and Integration Burwell investigated the November 8, 2022, email access complaint and that Burwell concluded that Plaintiff left her computer unlocked.  Id.  Davison also reiterated that Farrell was previously disciplined for not locking her computer and

14

received a final written warning that indicated a future violation could result in termination.  Id.  Davison also reviewed an email in which Farrell was provided a copy of her FWW.  ECF No. 35-2 at p. 73.  Plaintiff also denies receiving a copy of the FWW.  ECF No. 35-1 at p. 111.

Davison ultimately denied Farrell's appeal and supported the termination decision because Plaintiff's "repeated failure to lock or log out of [her] computer when leaving [her] workstation."  ECF No. 35-2 at p. 73.  Davison reasoned that Farrell had been educated on Mon Health's procedure but still failed to follow the policy on November 8, 2022.  Id.  Davison's letter further stated that Farrell's termination was consistent with Mon Health's prior employment decisions for employees who engaged in similar conduct. Id.  Finally, Davison confirmed that every Compliance complaint received from the Wedgewood Gateway Center in the prior year had been investigated and resolved.  Id.  Plaintiff did not respond to the appeal review letter.  ECF No. 35-1 at p. 112.

Thereafter, the subject litigation commenced on July 7, 2023, challenging the lawfulness of Farrell's employment termination.

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18.

Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV.   DISCUSSION

### A. Plaintiff's FMLA Discrimination and Retaliation Claim Fails as a Matter of Law.

In Count One of her Complaint, Plaintiff alleges she was discriminated against and retaliated for use of her Family Medical Leave Act ("FMLA") leave. ECF No. 1-1. "FMLA entitles eligible employees to take '12 workweeks of leave' during a 12-month period

16

for a qualifying 'serious health condition that makes the employee unable to perform the functions of' [her] job." Adkins v. CSX Transp., Inc., 70 F.4th 785, 795 (4th Cir. 2023) (quoting 29 U.S.C. § 2612(A)(1)(D)). "Under 29 U.S.C. § 2615(a)(2), employers may not retaliate against employees for exercising rights under the FMLA." Cumpston, 2018 WL 4855216, at *3 (Dotson v. Pfizer, Inc., 558 F.3d 284, 295 (4th Cir. 2009)).

An FMLA plaintiff claiming retaliation must make a prima facie case showing that (1) "[s]he engaged in protected activity"; (2) "that the employer took adverse action against [her]"; and (3) "that the adverse action was causally connected to the plaintiff's protected activity." Vannoy v. Fed. Rsrv. Bank of Richmond, 827 F.3d 296, 304 (4th Cir. 2016) (quoting Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)). Additionally, to allege a prima facie case of FMLA interference is straightforward. A plaintiff must show "(1) that [she] is entitled to an FMLA benefit; (2) that [her] employer interfered with the provision of that benefit; and (3) that the interference caused [her] harm." Adkins, 10 F.4th at 796.

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the burden then shifts to the defendant to provide "a legitimate, nonretaliatory reason for taking the employment action at issue." Hannah P. v. Coats, 916 F.3d 327, 347 (4th Cir. 2019). "The FMLA does not prevent an

employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Vannoy, 827 F.3d at 304-05 (finding the employee's misconduct, failure to communicate regarding absences, and failure to complete a portion of his performance improvement plan qualified as legitimate, non-discriminatory reasons for terminating plaintiff). The Court need not decide whether an employer discharging an employee was "wise, fair, or correct" and does not "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." Feldman v. L. Enf't Assocs. Corp., 752 F.3d 339, 350 (4th Cir. 2014).

"Once the plaintiff proffers evidence establishing [her] prima facie case, and the employer offers a non-retaliatory reason of the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" Vannoy, 827 F.3d at 304. "To do so, [the plaintiff] must offer evidence that tends to show that the defendant['s] explanation is not credible, or that retaliation is the most likely explanation." Cumpston, 2018 WL 4855216, at *4 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)). "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999).

"Accordingly, to survive summary judgment on an FMLA retaliation claim, 'the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation.'" Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017) (Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016)).

Defendant contends that Plaintiff cannot establish a prima facie claim for FMLA interference or retaliation. ECF No. 36 at pp. 14-16. As for the interference claim, Mon Health asserts that Plaintiff was never denied FMLA leave, that Mon Health approved Plaintiff's request to extend her FMLA leave, and that its supervisors provided Farrell with documentation to report her leave to New York Life. In fact, even though Plaintiff failed to report her FMLA use to the third-party administrator, Mon Health did not discipline her.

As for the retaliation claim, Defendant argues that Plaintiff has no evidence to support that her termination was causally connected to the exercise of her FMLA rights. ECF No. 36 at p. 17. Rather, Mon Health contends that Plaintiff was terminated for repeatedly violating Mon Health's Confidentiality, HIPAA, and Non-Disclosure policies even after receiving a FWW for the same misconduct. Defendant asserts that Farrell's October 2022 compliance complaint regarding comments allegedly made by Frizza

19

and O'Bryan about her use of FMLA does not create a causal connection to support the FMLA retaliation claim.

In contrast, Plaintiff contends the record supports that Mon Health supervisors held animus toward Plaintiff for her use of FMLA and retaliated against her.    ECF No. 37 at p. 14. Specifically, Director Hathaway only started mistreating Plaintiff after she began using substantial FMLA leave.    Further, Farrell argues that Mon Health did not meaningfully investigate, discipline, or deter Frizza and O'Bryan from harassing Plaintiff for taking leave to care for her son.    Additionally, Plaintiff claims her schedule change was retaliatory.    Plaintiff relies upon the temporal proximity between Plaintiff's termination and the use of her intermittent leave to further support the causal link.    Id.

Plaintiff further contends that she satisfied her burden under the McDonnell-Douglas framework.    Id. at p. 15. Specifically, she argues that Defendant has not shown a legitimate, non-discriminatory reason for Plaintiff's termination.    In the alternative, Plaintiff argues that Mon Health's purported reason for Farrell's termination — i.e., her multiple privacy policy violations — is pretextual for two reasons.    First, Plaintiff argues the proffered reason is pretextual because Farrell received a harsher punishment than Frizza for related misconduct.[2]    Id. at

_____

[2] Plaintiff incorrectly states that Frizza had not utilized FMLA leave.

p. 17.  Second, Plaintiff contends that Mon Health engaged in a pattern of taking adverse employment actions against employees who utilize FMLA leave.  Id. at p. 19.  Plaintiff relies upon the near in time terminations of Kilee Riggleman and Marcy Cornell, who also previously took FMLA during their term of employment.

Here, the Court agrees that Plaintiff's claim for FMLA discrimination and retaliation fails.  The Court assumes without deciding that Plaintiff made a prima facie case of retaliation.  Nonetheless, Plaintiff's claim fails because Mon Health provided evidence of a legitimate, nonretaliatory reason for taking the employment action and Plaintiff failed to proffer any legitimate evidence that Defendant's reason was mere pretext.

### 1. Defendant established a legitimate non-retaliatory reason for terminating Plaintiff.

Under the McDonnell-Douglas burden shifting framework, Defendant provided sufficient evidence to support that Plaintiff was discharged lawfully.  The record shows that Plaintiff was terminated after she violated Mon Health's HIPAA Privacy Policy for a second time.  Farrell received prior counseling through her FWW to lock her computer when stepping away from her workstation and to not share her password with others.  Despite this formal warning, Plaintiff's workstation was able to be accessed by others on November 8, 2022.

During Mon Health's investigation into Farrell's compliance complaint regarding Frizza's alleged access of her account, Farrell stated in writing that she did not know if she had locked her computer before leaving her workstation to deliver lunch or if Frizza had known her password.  ECF No. 35-2 at p. 67.  Sixteen months later, in the height of litigation, Plaintiff testified that she absolutely did not leave her computer unlocked.  ECF No. 35-1, Farrell Dep. at p. 76:8-19.  Despite Plaintiff's counsel's contentions to the contrary, Plaintiff's contradicting testimony and efforts to retract her prior statement do not negate the evidentiary value of the email communication to create a dispute of fact.  Plaintiff does not offer any evidence, beyond her self-serving testimony, to dispute that she left her computer unlocked.[3] Further, to the extent that Plaintiff speculated that another co-worker knew her password, such a fact would not help Plaintiff's case because Mon Health does not store employee passwords and thus, only Plaintiff could be responsible for its dissemination — again violating Mon Health's policies.

Mon Health terminated Plaintiff's employment after repeated misconduct for which she had previously been disciplined.  Farrell

_____

[3] "[U]ncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact sufficient to defeat summary judgment." Prather v. Doe Officers, 2022 WL 4391510, at *4 (N.D.W. Va. Sept. 22, 2022) (quoting Diquollo v. Prosperity Mortg. Corp., 984 F.Supp.2d 563, 570 (E.D. Va. 2013)).

was warned that future failure to secure her workstation could result in termination and, at minimum, Plaintiff could not affirmatively state that she locked her computer when Mon Health investigated her compliance complaint. Furthermore, Mon Health's motive for terminating Plaintiff can only be based upon the information known to Mon Health at the time of termination. In November 2022, Farrell told Burwell – the Mon Health employee tasked with investigating her compliance complaint - that she did not know if her computer was locked when Frizza allegedly accessed Plaintiff's email. To the extent that Cornell testified that Farrell told her on November 8, 2022, that she locked her computer, Cornell did not share this information with leadership when taking part in the termination discussions. See ECF No. 37-5 at pp. 61-62. Cornell further testified that she did not have any way of personally knowing whether Farrell's computer was locked, because she was not present when Farrell stepped away from her work area. Id. This is not a substantial dispute of material fact.

### 2. Plaintiff failed to establish Defendant's proffered reason is merely pretextual.

Furthermore, Plaintiff failed to show that Defendant's proffered reason for her termination was pretextual. Plaintiff asserts that Mon Health's reason for terminating Plaintiff was merely pretext for FMLA discrimination because Frizza was not terminated for similar misconduct. This argument fails. As Mon

23

Health provided in its reply brief, Frizza also utilized FMLA leave; thus, Frizza was not treated more favorably than Farrell but for her FMLA use. ECF No. 38 at pp. 1, 5-6, ECF No. 35-7, ECF No. 38-1. Furthermore, the other alleged comparators that utilized FMLA are not similarly situated to Plaintiff because they did not engage in the same conduct. The temporal proximity arguments are similarly insufficient because Farrell's discharge occurred just hours after she answered Burwell's investigation questions and informed Mon Health that she did not know if her computer had been locked on November 8, 2022. Though Plaintiff utilized her intermittent leave on November 9, 2025, this fact alone, when considering the extent of Farrell's intermittent leave use, does not break the chain of causation or show that Defendant's explanation is not credible. Accordingly, Plaintiff's claim for FMLA retaliation or discrimination fails as a matter of law and Defendant's Motion for Summary Judgement is **GRANTED** as to Count One.

**B. Plaintiff's HIPAA Harless Claim Fails as a Matter of Law.**

Plaintiff alleges she was retaliated against for reporting a Health Insurance Portability and Accountability Act ("HIPAA") violation, in violation of a substantial public policy of West Virginia. ECF No. 1-1.

> The rule that an employer has an absolute
> right to discharge an at will employee must be
> tempered by the principle that where the

> employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., Harless v. First Nat'l Bank of Fairmont, 246 S.E.2d 270 (W. Va. 1978). To succeed on a Harless retaliatory discharge, a plaintiff must prove: (1) "[t]hat a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) "[t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy"; and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal." Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 537 (W. Va. 2018). "The determination whether a substantial public policy exists is a question of law for the court." Frohnapfel v. ArcelorMittal Weirton LLC, 100 F. Supp. 3d 556, 562–63 (N.D.W. Va. 2015)

> When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act.

Syl. Pt. 4, Birthisel v. Tri-Cities Health Servs. Corp., 424 S.E.2d 606 (W. Va. 1992) (internal citation omitted).

Upon a thorough review of West Virginia state and federal case law, this Court has not found an instance in which HIPAA has been specifically acknowledged as a source of public policy to support a Harless claim.[4]  However, Defendant does not challenge that HIPAA could be the public policy for a Harless claim, recognizing that federal statutory law can embody public policy for a Harless claim and that West Virginia has an interest in preventing the unauthorized disclosure of confidential medical records.  ECF No. 36 (citing Collins v. Lowe's Home Centers, LLC, 2017 WL 6061980 (S.D.W. Va. Dec. 7, 2017); Bartos v. PDC Energy, Inc., 275 F. Supp. 3d 755 (N.D.W. Va. 2017); and State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell, 228 W. Va. 252 (2011)).  Accordingly, the Court assumes without deciding that HIPAA qualifies as a substantial public policy to satisfy the first element of a Harless wrongful discharge claim.

Defendant contends that Plaintiff's HIPAA Harless claim fails because Plaintiff did not report a HIPAA violation, and that Plaintiff did not articulate how her termination violated West

---

[4] In Constellium Rolled Prods. Ravenswood, LLC v. Rogers, the plaintiff brought a common law claim for retaliation in violation of the substantial public policy found in HIPAA. However, the Southern District of West Virginia court did not reach the merits of the claim because the plaintiff voluntarily dismissed the Harless claim with the consent of Defendants. 2017 WL 1552325, at *4 (S.D.W. Va. Apr. 28, 2017).

Virginia's substantial interest in protecting confidential medical records. ECF No. 36 at pp. 23-24. During the Court's motion hearing, Defendant argued that HIPAA only protects actual medical records and that the email allegedly accessed by Frizza was just an email with Plaintiff's son's name, not protected health information. Defendant also contends that terminating Plaintiff for failing to lock her workstation and violating Mon Health's Confidentiality, HIPAA, and Non-Disclosure policies better supports West Virginia public policy. Id. at p. 24. Furthermore, it contends that Farrell cannot refute Mon Health's legitimate, non-discriminatory reason for her termination. ECF No. 38 at p. 2.

In contrast, Plaintiff argues that her November 2022 compliance report regarding Frizza accessing her email qualifies as a HIPAA violation report because Frizza viewed an email relating to Plaintiff's son's medical care. ECF No. 37 at p. 23; see ECF No. 1-1, Compl. at ¶ 22. Further, Farrell claims that she reported a HIPAA violation when someone viewed Frizza's medical records while logged into her account in September 2022. Id. Finally, Plaintiff argues that there is no legitimate non-discriminatory reason for her discharge.

First, Plaintiff's efforts to transform the circumstances leading to her FWW into a HIPAA violation are unpersuasive. Mon Health completed an audit of her medical chart access, which reflected inappropriate access to Plaintiff's co-workers' medical

records.  Plaintiff's denial and contention that someone else used her account to look at Frizza's PHI does not constitute a HIPAA violation report.   Farrell did not make a report; she was questioned by Mon Health as part of its own investigation into concerns that Plaintiff knew her co-workers' PHI and had violated Mon Health's privacy policies.  This argument does not support the Harless claim.

Second, the Court looks to whether Plaintiff's compliance complaint regarding Frizza's access of her email account qualifies as a HIPAA violation report.   Plaintiff argues without any substantial support that the email qualifies as PHI because it relates to her son's medical care.  ECF No. 37 at p. 23.  However, the specific email that was allegedly accessed is not in the record before the Court.  Rather, Plaintiff relies upon Kilee Riggleman's report that Frizza viewed an email with her son's name in it. Riggleman testified that the email Frizza viewed in Farrell's account included Plaintiff's son's name and looked like FMLA paperwork.  ECF No. 37-10, Riggleman Dep. at p. 20:17-22.  Though the Court is skeptical as to whether the compliance report for the email access qualifies as a HIPAA violation report, the Court need not decide this question because Plaintiff cannot satisfy the third and fourth elements of her claim.

Plaintiff was not terminated for reporting a HIPAA violation. Just as Plaintiff failed to show that Defendant's proffered reason

for terminating her was mere pretext for FMLA discrimination, Plaintiff similarly fails to show that Mon Health lacked an overriding legitimate business justification for the dismissal. As elaborated upon above, the record clearly establishes that Plaintiff did not appropriately secure her computer access — either by sharing her password or leaving her workstation unlocked. Despite being trained, and later counseled, on Mon Health's compliance, non-disclosure, and HIPAA policies, Plaintiff left her workstation unsecure. Thus, Plaintiff's termination was justified and furthered Defendant's interest in maintaining patient privacy and medical record confidentiality. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count Two.

### C. Plaintiff's FMLA Harless Claim Fails as a Matter of Law.

As elaborated upon above, a Harless claim allows a plaintiff to bring a cause of action for an employment termination which violates a substantial public policy. Plaintiff contends that she was wrongly terminated based upon her use of FMLA leave. "[T]he FMLA prohibits employers from discrimination associated with leave under the FMLA and prohibits employers from interfering with, restraining or denying any rights provided under the FMLA." Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 539 (2018).

The Supreme Court of Appeals for West Virginia and West Virginia federal courts recognize that the FMLA can serve as a source of public policy for a Harless wrongful discharge claim.

29

Id.; Vandevander v. Verizon Wireless, LLC, 149 F. Supp. 3d 724, 731 (S.D.W. Va. 2016) (finding the FMLA provides a substantial public policy sufficient to support a West Virginia common law claim for retaliatory discharge in violation of public policy); Collins v. Lowe's Home Centers, LLC, 2017 WL 6061980 (S.D.W. Va. Dec. 7, 2017)(finding that the FMLA provides the substantial public policy upon which a plaintiff may state a Harless claim); Bartos v. PDC Energy, Inc., 275 F. Supp. 3d 755, 767 (N.D.W. Va. 2017) (finding that the FMLA provided the plaintiff with the substantial public policy that allowed her Harless claim to survive summary judgment); Beegle v. Wexford Health Sources, Inc., 2023 WL 3485276, at *3 (S.D.W. Va. May 16, 2023).

Defendant incorporates its prior arguments and argues that Plaintiff's FMLA Harless claim fails because Plaintiff failed to produce sufficient evidence to support the third and fourth Harless elements regarding causation and overriding justification.  ECF No. 36 at pp. 24-25.  Plaintiff argues that the third and fourth factors mirror the analysis of her FMLA discrimination claim.  ECF No. 37 at p. 37 at p. 22.  Thus, Plaintiff reiterates that her termination was motivated by her FMLA use.  Id.  Plaintiff again argues that employees who did not utilize FMLA were treated more favorably, and Mon Health has a practice of terminating employees who use FMLA.  Id.  Additionally, Plaintiff argues that Defendant lacked a legitimate business justification for Farrell's

30

termination because her alleged confidentiality and privacy violations were pretextual and not based in evidence. Id. The Court already addressed and discredited these arguments and incorporates herein its previous discussions regarding Plaintiff's failure to establish pretext and the Court's acceptance of Mon Health's lawful reason for discharging Farrell. Accordingly, for the reasons already set forth above regarding Plaintiff's FMLA discrimination claim and HIPAA Harless claim, Defendant's Motion for Summary Judgment is **GRANTED** as to Count Three.

**V.    CONCLUSION**

For the reasons stated herein, *Defendant Mon Health's Motion for Summary Judgment* [ECF No. 35] is **GRANTED**. Plaintiff's Complaint [ECF No. 1-1] is **DISMISSED WITH PREJUDICE**. All other pending motions, deadlines, and hearings are hereby **TERMINATED**. This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of Mon Health Care, Inc.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  September 25, 2025

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA